IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* CHRISTINE FLOYD AND<br>ANTHONY FLOYD,<br><br>                Plaintiffs,<br><br>vs.<br><br><br>ST. ANTHONY'S MEDICAL CENTER d/b/a<br>ARNOLD URGENT CARE, FENTON URGENT<br>CARE, LEMAY URGENT CARE<br><br><br><br><br>                Defendants. | Civil Action No.<br><br>**JURY TRIAL DEMANDED**<br><br>**FILED UNDER SEAL<br>PURSUANT TO 31 U.S.C.<br>§ 3730(b)(2)**<br><br>**DO NOT PLACE IN PRESS BOX**<br><br>**DO NOT ENTER ON PACER** |

## COMPLAINT

## VIOLATIONS OF THE FALSE CLAIMS ACT
## UNDER 31 U.S.C. § 3729(a)(1) & (2)

### Introduction

1.    Ms. Christine Floyd and Mr. Anthony Floyd (the "relators") bring this action on behalf of the United States of America against defendants for treble damages and civil penalties arising from the defendant's false statements and false claims in violation of the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* The violations arise out of false information provided to the Government by defendant St. Anthony's Medical Center d/b/a Arnold Urgent Care, Fenton Urgent Care, Lemay Urgent Care ("St. Anthony's") to the Centers for Medicare Services ("Medicare") in order to obtain inflated payments for patient visits to the urgent care facilities

1

operated by St. Anthony's by characterizing them as emergency room visits rather than urgent care visits.

2. As required by the False Claims Act, 31 U.S.C. § 3730(b)(2), relators have provided to the Attorney General of the United States and to the United States Attorney for the Eastern District of Missouri a statement of all material evidence and information related to the complaint. This disclosure statement is supported by material evidence known to relators at their filing establishing the existence of defendant's false claims.

## Jurisdiction and Venue

3. This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*. This Court has jurisdiction over this case pursuant to 31 U.S.C. §§ 3732(a) and 3730(b). This Court also has jurisdiction pursuant to 28 U.S.C. § 1345 and 28 U.S.C. § 1331.

4. Venue is proper in the Eastern District of Missouri pursuant to 31 U.S.C. § 3732(a), because, *inter alia*, a substantial portion of the acts or omissions to act proscribed by 31 U.S.C. §§ 3729 *et seq*. and complained of herein took place in this district, and is also proper pursuant to 28 U.S.C. § 1391(b) and (c).

## Parties

5. Relator Anthony Floyd is a citizen and resident of the State of Missouri, residing in St. Louis County. Anthony Floyd is a recipient of benefits under the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare Program ("Medicare Program"), established by Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, *et seq*. In March of 2007 and June of 2007, Anthony Floyd was a patient at a St. Anthony's Urgent Care Center on two occasions. It is from these two visits that the relators' information was obtained pursuant to

the alleged False Claims Act claims.

6. Relator Christine Floyd is a resident of the United States and a resident of the State of Missouri. Christine Floyd is a certified professional medical coder with St. Louis Connect Care, an Urgent Care Center located in St. Louis City. Ms. Floyd has been a medical coder for over 15 years, and as a result, Ms. Floyd has extensive knowledge regarding proper medical coding for both urgent care and emergency room facilities. Relator Christine Floyd is the mother of relator Anthony Floyd and with whom Anthony Floyd resides.

7. Relators are the original source of this information to the United States. They have direct and independent knowledge of the information on which the allegations are based and have voluntarily provided the information to the Government for filing an action under the False Claims Act which is based on the information.

8. The United States of America ("U.S. Government") provides the Medicare Program for qualified persons who are over age 65; who are disabled; or who have end-stage renal disease. Persons eligible for Medicare-reimbursed services are occasionally referred to as "beneficiaries" or "Medicare beneficiaries." The Medicare Program is a federally funded health insurance program administered by the Secretary of the Department of Health and Human Services ("HHS") through the Centers for Medicare & Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration. The Secretary of Health and Human Services ("HHS") has broad statutory authority to "prescribe such regulations as may be necessary to carry out the administration of the (Medicare) insurance programs. . . ." 42 U.S.C. § 1395hh(a)(1). In addition to promulgating regulations, the Secretary has the power to formulate rules for the administration of the Medicare Program, through the issuance of manual

instructions, interpretative rules, statements of policy, and guidelines of general applicability. 42 U.S.C. § 1395hh(c)(1). Under this power the Secretary of HHS formulated the Medicare Provider's Manual. HHS requires that providers comply with the Medicare Provider's Manual, as well as Medicare statutes and regulations, when submitting claims seeking reimbursement for services. In order to be paid for services rendered, a Medicare provider must submit a claim for payment to the carrier by either mailing a "Request for Medicare Payment" form or by transmitting the claim electronically through the Medicare Claims Entry System (collectively "Medicare Claim Form"). A provider seeking reimbursement from Medicare has a duty not to make false statements or misrepresentations of material facts concerning requests for payment under Medicare, 42 U.S.C. §§ 1320a-7b(a)(1) & (2); 1320a-7, 1320a-7a; 42 C.F.R. § 1001.101(a)(1). As such, the provider must furnish and certify the accuracy of the information on the Medicare Claim Form, including the identity of the patient, the provider number, the service provided, and the medical necessity for the services rendered. Because of the large number of claims received by Medicare carriers, carriers generally rely on and pay claims based on the information on the Medicare Claim Forms and the providers' certifications. Claims are usually investigated after payment only if an irregularity is discovered or alleged.

9. Defendant St. Anthony's operates a hospital at 10010 Kennerly Road, St. Louis County, Missouri 63128. The facility is licensed by the State of Missouri, Department of Health and Senior Services, as a General Acute Care Hospital. St. Anthony's is a provider of Medicare Services with a CMS provider number of 260077.

10. Defendant St. Anthony's also operates three Urgent Care Centers ("UCC") in three separate locations in St. Louis County: Fenton (located at 714 Gravois Road,

Fenton, Missouri 63026), LeMay (located at 2900 Lemay Ferry Road, St. Louis, Missouri 63125), and Arnold (located at 3619 Richardson Square Drive, Arnold, Missouri 63010). These three urgent care units handle patient care issues that require same day, but not emergency, attention. On a website describing their UCC services, St. Anthony's clearly describes urgent care as appropriate for minor injuries and "not a substitute for emergency care." According to St. Anthony's website, the three UCCs have seen at least 92,723 patients. Upon information and belief, between 25% to 40% of these patients are Medicare patients.

## Facts Common to All Counts

11. On or about March 4, 2007, Anthony Floyd went to St. Anthony's UCC located in Arnold, Missouri. Anthony had serious abdominal pain - a serious, but non-emergency complaint - and was given medication for same via an injection.

12. On or about June 5, 2007, Anthony Floyd returned to St. Anthony's UCC in Arnold. On this date he was experiencing back problems, but was clearly experiencing a non-emergency situation.

13. Subsequent to each visit, Anthony Floyd received a copy of the Medicare Summary Notice outlining the submissions and payments that had been made through Medicare for his care at St. Anthony's Arnold UCC.

14. Upon review of these Medicare Summary Notices, relator Christine Floyd noticed that on each UCC visit defendant St. Anthony's improperly coded them as an *emergency* department visit using a G series code, G0381, and charged $131. In addition, relator Floyd noticed that St. Anthony's utilized the address of their central hospital at 10010 Kennerly Road in their submission to Medicare rather than the address of the Arnold UCC where Anthony Floyd

had actually received treatment.

15. To ensure that claims submitted by providers to CMS are processed in an orderly and consistent manner, standardized coding system are issued by CMS, and are mandated by The Health Insurance Portability and Accountability Act of 1996. This coding system is titled the Healthcare Common Procedure Coding System ("HCPCS"). HCPCS is divided into two principal subsystems, referred to as Level I and Level II of HCPCS.

16. HCPCS Level I is made up of Current Procedural Terminology ("CPT"), which is a uniform coding system consisting of descriptive terms and identifying codes that are used primarily to identify medical services and procedures furnished by physicians and other health care professionals. The CPT is maintained by the American Medical Associations ("AMA"). Level I does not include costs needed to separately report medical items or services that are regularly billed by suppliers other than physicians.

17. HCPCS Level II is a standardized coding system that is used primarily to identify products, supplies, and services not included in the CPT codes. In addition, because Medicare and other insurers cover a variety of services, supplies, and equipment that are not identified by CPT codes, the level II HCPCS codes were established for submitting these items. Level II codes are referred to as alpha-numeric codes because they consist of a single alphabetical letter followed by 4 numeric digits, while CPT codes Level I are identified using 5 numeric digits.

18. Upon information and belief, the "G" code submitted by defendant St. Anthony's to CMS (G0381) is a HCPCS Level II code.

19. Prior to January 1, 2007, all charges for both hospital emergency room ("ER") and UCC visits were coded under the 99000 code series under HCPCS Level I. Under HCPCS

Level I, UCC visits for new or "initial" patients were coded under 99201-99205. Subsequent or "established" patient visits to the UCC were coded under 99211-99215. ER visits were coded 99281-99284 without any distinction between initial and established. Generally, the ER 99000 codes allow significantly higher payments than the UCC 99000 codes.

20. After January 1, 2007, the 90000 series codes remained the same, but a new series of codes were promulgated to deal with ER visits for routine matters (i.e., sore throats, prescription refills, etc.) that are not true emergencies. This was done with a series of G codes, G0380-G0384.

21. The G series code additions, however, do not allow for UCCs to utilize G codes unless they are operated as virtual emergency rooms and when at least one of three requirements are met:

    a. The facility is licensed by the state in which it is located under applicable state law as an emergency room or an emergency department;

    b. The facility is held out to the public (by name, posted signs, advertising, or other means) as a place that provides care for emergency medical conditions on an urgent basis without requiring a previously scheduled appointment; or

    c. During the calendar year immediately preceding the calendar year in which a determination under this section is being made, based on a representative sample of patient visits that occurred during that calendar year, it provides at least one-third of all of its

outpatient visits for the treatment of emergency medical conditions on an urgent basis without requiring a previously scheduled appointment.

22. The UCCs of St. Anthony's located in Arnold, Fenton, and LeMay, are not virtual emergency rooms meeting the requirements specified in paragraph 21.

23. St. Anthony's UCCs are not licensed emergency rooms by the Missouri Department of Health and Senior Services.

24. St. Anthony's website does not hold out any of its UCCs as providers of emergency care for medical conditions and, in fact, specifically directs persons seeking emergency treatment to its hospital emergency department on Kennerly Road. Signage for the Urgent Care Centers does not state that the Centers provide emergency care.

25. Upon information and belief, St. Anthony's does not treat any emergency conditions at its UCCs, much less are one-third of the patients seen at these UCCs treated for emergency conditions.

26. Because St. Anthony's UCCs do not meet the requirements for being classified as an emergency room or department under the room under the G code series, visits should generally be coded utilizing the 90000 series of HCPCS Level I codes rather than the G code series contained in HCPCS Level II.

27. Specifically, the code that should have utilized for Anthony Floyd's March 4, 2007, visit should have been 99202, which is the proper code for an initial visit for office or other outpatient services. The proper utilization of this code would have yielded a claim of $42.92, rather than $131.

28. The visit of Anthony Floyd on June 5, 2007, should have been 99212, which is an

8

office or other outpatient visit for an established patient. The proper use of 99212 would have allowed a claim of $22.01 rather than $131.

## COUNT I
## PRESENTING FALSE OR FRAUDULENT CLAIMS
## TO U.S. GOVERNMENT TO OBTAIN PAYMENT,
## IN VIOLATION OF 31 U.S.C. § 3729(a)(1)

29. Relators reallege and incorporate by reference paragraphs 1 through 28 of this complaint.

30. On or before March 4, 2007, and up to, including, and/or subsequent to June 4, 2007, defendant St. Anthony's has knowingly presented, or caused to be presented, to the U.S. Government false or fraudulent claims for payment to the Centers for Medicare Services ("Medicare") in order to obtain inflated payments for patient visits to St. Anthony's Urgent Care Centers by characterizing them as emergency room visits rather than urgent care visits as more fully described in paragraphs 11-14 and 26-28 of this complaint, and when, in fact, they actually knew these claims were false or were deliberately ignorant of or acted in reckless disregard of the fact that such claims were false.

31. Said claims have enabled defendant St. Anthony's to receive payments for services greater than the amount for which they were entitled.

32. Upon information and belief, defendant St. Anthony's is systematically and pervasively entering the wrong codes for patient visits to its UCCs in violation of Federal laws, rules or regulations and at a substantial financial detriment to the United States of America.

33. Defendant St. Anthony's conduct, as described herein, violated the False Claims Act, 31 U.S.C. §§ 3729(a)(1).

34. The U.S. Government, unaware of the falsity of the claims and/or statements, and

9

in reliance on the accuracy thereof, has paid claims submitted by defendant to St. Anthony's and has been damaged to the extent that these funds were in excess of the amounts for which defendant was entitled.

35.    As such, the U.S. Government and relators have been damaged in amounts to be determined at trial.

36.    On information and belief, the conduct of defendant St. Anthony's, as described herein, constitutes outrageous conduct and was done intentionally, willfully, maliciously, and/or with reckless indifference to the rights of the U.S. Government, such that the U.S. Government is entitled to recover exemplary or punitive damages.

WHEREFORE, relators respectfully request this Court to enter judgment against defendant St. Anthony's as follows: that the U.S. Government be awarded damages in the amount of three times the damages sustained by the U.S. Government because of the false or fraudulent claims alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides; that civil penalties of $10,000 be imposed for each and every act where defendants violated 31 U.S.C. § 3729(a)(1); that pre- and post-judgment interest be awarded to the relator and the U.S. Government; that reasonable attorneys' fees, costs, and expenses be awarded to relator which were necessarily incurred by relator in bringing and pressing this case; that the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint; that the relator be awarded the maximum amount allowed pursuant to the False Claims Act; for exemplary or punitive damages in an amount to fairly and reasonably punish defendants for their actions as described herein and serve as an example to others; and that this Court award such other and further relief as it deems proper.

## COUNT II
## MAKING OR USING FALSE RECORDS OR STATEMENTS TO GET FALSE OR FRAUDULENT CLAIMS PAID BY U.S. GOVERNMENT, IN VIOLATION OF 31 U.S.C. § 3729(a)(2)

37. Relators reallege and incorporates by reference paragraphs 1 through 36 of this complaint.

38. On or before March 4, 2007 and up to, including, and/or subsequent to June 4, 2007, defendant St. Anthony's knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid by the U.S. Government by representing to the U.S. Government that visits to St. Anthony's Urgent Care Centers were emergency room visits rather than Urgent Care visits as more fully described in paragraphs 11-14 and 26-28 of this complaint and by representing that these visits were made to their central hospital at 10010 Kennerly Road rather than to the UCC where services were performed, and when, in fact, they actually knew these records or statements were false or were deliberately ignorant of or acted in reckless disregard of the fact that such records or statements were false.

39. Defendant St. Anthony's made these misrepresentations to obtain inflated payments to which they would otherwise not have been entitled.

40. Upon information and belief, defendant St. Anthony's is systematically and pervasively entering the wrong codes for patient visits to its UCCs in violation of Federal laws, rules or regulations and at a substantial financial detriment to the United States of America.

41. Defendant St. Anthony's conduct, as described herein, violated the False Claims Act, 31 U.S.C. §§ 3729(a)(2).

42. The U.S. Government, unaware of the falsity of the claims and/or statements, and in reliance on the accuracy thereof, has suffered actual damages to the extent that any claims

paid based upon the misrepresentations of defendant St. Anthony's were in excess of the amounts for which defendant was entitled.

43. The U.S. Government and relator have been damaged in amounts to be determined at trial.

44. On information and belief, the conduct of defendant St. Anthony's, as described herein, constitutes outrageous conduct and was done intentionally, willfully, maliciously, and/or with reckless indifference to the rights of the U.S. Government, such that the U.S. Government is entitled to recover exemplary or punitive damages.

WHEREFORE, relators respectfully requests this Court to enter judgment against defendant St. Anthony's as follows: that the U.S. Government be awarded damages in the amount of three times the damages sustained by the U.S. Government because of the false records or statements alleged within this Complaint, as the Civil False Claims Act, 31 U.S.C. §§ 3729 *et seq.* provides; that civil penalties of $10,000 be imposed for each and every act where defendants violated 31 U.S.C. § 3729(a)(2); that pre- and post-judgment interest be awarded to the relator and the U.S. Government; that reasonable attorneys' fees, costs, and expenses be awarded to relators which were necessarily incurred by relators in bringing and pressing this case; that the Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act for which redress is sought in this Complaint; that the relators be awarded the maximum amount allowed pursuant to the False Claims Act; for exemplary or punitive damages in an amount to fairly and reasonably punish defendants for their actions as described herein and serve as an example to others; and that this Court award such other and further relief as it deems proper.

LAW OFFICES OF
AL W. JOHNSON


*/s/ Al W. Johnson*

Al W. Johnson, #5386
112 South Hanley, Suite 200
St. Louis, Missouri 63105
Telephone: (314) 726-6489
Facsimile: (314) 726-2821
ajohnson@awj-law.com

And

LAW OFFICES OF
AL W. JOHNSON

*/s/ R. Ryan Kirby*

R. Ryan Kirby, #501227
112 South Hanley, Suite 200
St. Louis, Missouri 63105
Telephone: (314) 726-6489
Facsimile: (314) 726-2821
rkirby@awj-law.com